# SUPREME JUDICIAL COURT

FOR THE

COUNTY OF MIDDLESEX,
OCTOBER TERM 1844, AT CAMBRIDGE.

PRESENT ˙

Hon. LEMUEL SHAW, Chief Justice.
Hon. SAMUEL S. WILDE,
Hon. CHARLES A. DEWEY. } Justices.
Hon. SAMUEL HUBBARD,

Edmund Parker, Administrator *vs.* Charles W. Green & another.

The 57th rule of the court, requiring a party " to file a statement in writing of any specific or substantive matter of discharge or avoidance, which he proposes and in tends to give in evidence on trial," does not apply to matter offered in evidence by way of rebutting the evidence introduced by the other party.

A second mortgagee, who purchases and takes an assignment of the first mortgage, and with the consent of his mortgagor, sells a part of the mortgaged premises, and the wood growing on another part thereof, and receives the proceeds, is entitled by law, as against one who claims under his mortgagor, to apply those proceeds towards payment of the first mortgage, unless his mortgagor, when these proceeds are received, requests him to apply them towards payment of the second mortgage.

Writ of entry to foreclose a mortgage of several pieces of land. The mortgage deed declared on was made to the demandant's intestate, Jeremiah Green, by Charles Green, one of the tenants, on the 16th of September 1831, to secure payment of a note of the same date for $2000 and interest. The case went to trial on an issue joined by the demandant and Charles

12 *

W. Green, the other tenant, as hereinafter stated in the opinion of the court.

Besides the mortgage declared on, the *demandant* gave in evidence a mortgage of the demanded premises made by Isaac Green, on the 9th of June 1826, to William Patten, and duly assigned to said Jeremiah Green after the date of said Charles's mortgage to him. The *tenant* (Charles W. Green) gave in evidence the discharge of said Charles Green, under the insolvent law, and a deed of his assignee, dated October 27th 1840, conveying to said Charles W. the equity of redemption of the demanded premises; also a mortgage of the same premises, made by said Charles Green to Brewster & Pierce, on the 28th of June 1838, and an assignment thereof to said Charles W.

Among other evidence, given by said tenant, was a mortgage deed made by him to said Jeremiah Green, on the 7th of November 1839, to secure a note of the same date for $500; which note (it was admitted) was paid to the demandant, as administrator of said Jeremiah, on the 11th of September 1841.

John W. Proctor, a witness for the demandant, testified that in 1839 he had in his possession the mortgage (above mentioned) from Charles Green to Brewster & Pierce, and that said Charles called on him several times, for the purpose of purchasing that mortgage and the note secured by it, and represented himself as acting for said Charles W.; that the witness inquired of him respecting the other incumbrances on the land, and sold the said mortgage and note, and assigned them to said Charles W., taking in payment therefor said Charles W.'s note for $475, indorsed by said Jeremiah Green: That said Charles, in some of the conversations concerning the purchase of said mortgage and note, stated to the witness that there was a previous mortgage of the same lands to Jeremiah Green for $2000, and interest thereon to the amount of $400, and another mortgage to Joseph B. Wilson for $1000, and interest amounting to $200; that said Charles W. could afford to pay $400 for the assignment of Brewster & Pierce's mortgage, and that no other person could afford to pay any thing for it.

That it was stated to him, by said Charles, that four acres of the mortgaged land had been sold to Elisha Green, and another piece to Thomas Gould, and that there was due, on said mortgage, to Jeremiah Green, the sum of $2400: That Charles W. Green was present, once or more, when said Charles was negotiating with the witness, but that said Charles " did the talking;" and the witness was not confident that Charles W. was present when said Charles made the statements above mentioned.

The tenant objected to the admission of the statements made to the witness by Charles Green, but the objection was overruled.

Joshua Prescott, a witness for the demandant, testified that he, as counsel for Jeremiah Green, had " done writing for him for several years;" that said Jeremiah, in November 1839, requested him to call on Charles Green; that he accordingly did so, and told him that Jeremiah was dissatisfied, and wished for the interest on the $2000 note secured by mortgage, and also a part of the principal, and that he would sue said Charles, unless a payment should be made: That reference was made by the witness, in his conversation with said Charles, to the mortgage declared on in the present suit, but that he did not remember that any precise amount was stated as due from Charles to Jeremiah.

Thomas Gould, a witness called by the demandant, testified that he purchased of Jeremiah Green a lot of land mortgaged to him by Charles Green, and paid $500 for it; that Charles Green came to him and told him that Jeremiah was greatly in want of money, and wished him to buy it, saying that Jeremiah was unwell and not able to come and see the witness; that said Charles brought the deed of said land to the witness, and took the $500, and said he would carry it to Jeremiah, saying that it was " to go to sink a debt which he " (Charles) " owed to Jeremiah."

The demandant put into the case a bill and answer, and the evidence taken, in a suit in equity wherein said Charles W. Green was plaintiff, and the present demandant was defendant.

A part of this evidence was a deposition given by said Charles Green.

On the note for $2000, secured by the mortgage declared on by the demandant, were several indorsements of payment; but the testimony left it doubtful whether they were in the hand writing of Jeremiah Green or of Charles Green.

The demandant insisted, that whatever sums of money had been received by Jeremiah Green, as proceeds of the lands mortgaged to him by Charles Green, had been applied to pay the debt secured by the Patten mortgage, and that he had a right so to apply them. The tenant thereupon moved for a postponement of the trial, on the ground of surprise; as no notice had been given to him that the Patten mortgage would be introduced into the case, or that any such application of said moneys would be insisted on. The court overruled the motion, and the trial proceeded.

The *tenant* gave evidence tending to show that the $1000, for which the above mentioned mortgage to Joseph B. Wilson was made by Charles Green, was paid to Jeremiah Green for the purpose of reducing the sum due on his aforesaid mortgage; and that wood and timber, growing on some of the pieces of land mortgaged to Jeremiah Green, had been cut off and sold by him, and the proceeds applied towards the mortgage debt. (The particulars of the evidence given by the tenant, as to payments, &c. are not necessary to the understanding of the points decided by the court.)

The tenant insisted that he had the right, which was originally the right of Charles Green, to apply the proceeds of all the mortgaged lands, sold by Jeremiah Green, to the discharge of the debt secured by the mortgage made by said Charles to said Jeremiah; that Jeremiah had no right to apply those proceeds to any other purpose, without the consent of Charles; that Jeremiah had not in fact applied or attempted to apply them otherwise; and that the consideration, mentioned in the deeds given by Jeremiah, of the lands so sold by him, was to be taken, in the absence of all controlling evidence, as showing the amount of those proceeds.

Parker, Administrator *v* Green & another.

The judge before whom the trial was had instructed the jury, " that they, under the circumstances of the case, should decide what amount was paid by Jeremiah Green for tne Patten mortgage, and that interest should be charged upon that sum from the time of its payment; that they would then decide what sums said Jeremiah had received, and that they might apply the sums so received by him towards paying and satisfying the amount so paid by him for said Patten mortgage, and the interest thereon ; and that the balance, if any, would go towards payment of the mortgage from said Charles to said Jeremiah : That said Jeremiah had a right, without the consent of said Charles, to apply the proceeds of said lands, mortgaged to him by said Charles, to the payment and satisfaction of the debt secured by the Patten mortgage, said Charles not having requested him, when said moneys were paid, to apply them towards payment of the debt secured by the mortgage made to him by said Charles."

The judge also permitted the demandant to give in evidence the Patten mortgage, and instructed the jury, that they might apply the moneys, received as aforesaid, to the payment thereof, though objected to by said Charles W. (as above mentioned) on the ground that no notice had been given him of any such matter.

The jury found, by their verdict, that $2380 were due on the mortgage from Charles Green to Jeremiah Green.  The said Charles W. then moved " that the verdict be set aside and a new trial granted, on account of the rulings and instructions aforesaid ; and because the verdict was against the evidence and the weight of evidence in the case, and not according to the law applicable thereto; and because the jury did not find, by their verdict, the issue submitted to them."

The argument was had at the last October term

*H. H. Fuller,* for C. W. Green.

*Buttrick,* for the demandant.

HUBBARD, J.   This was a writ of entry to foreclose a mortgage made by Charles Green to Jeremiah Green, deceased, of whose estate the demandant is administrator.  The said Charles

Green, one of the tenants, disclaimed all title to the land de
manded, and filed a declaration that he should make no defence
to the suit. Charles W. Green, the other tenant, pleaded the
general issue, and filed a statement of his defence, that the note
secured by the mortgaged premises was paid. The issue being
joined, the case went to trial between the demandant and the
said Charles W. Green. The said Charles W. claimed the
land demanded in the writ through the said Charles Green.
The demandant joined them as tenants in the writ by virtue of
the provision in the Rev. Sts. *c.* 107, § 8, that " the action may
be brought, in the same manner as a writ of entry, against
whoever is tenant of the freehold, and the mortgagor may,
in all cases, be joined as a defendant, whether he then has any
estate in the premises or not."

A question arose, whether the declarations of Charles Green
could be given in evidence ; it being objected by the said
Charles W., that he had no interest in the suit, and that he
might be called upon as a witness. But the presiding judge.
ruled that his declarations were admissible on the fact submitted
to the jury, viz. whether the note, which the mortgage was
given to secure had been paid by him ; it being proved that in
a previous suit between the same parties, in which the said
Charles W. was plaintiff in equity, and the said Parker defend-
ant, the said Charles, as witness for said Charles W., had sworn
that he paid a prior mortgage on the same premises, called the
Patten mortgage, out of his personal estate, and consequently, if
moneys, proceeding from sales of a part of the estate mortgaged,
could be appropriated to the payment of the note secured by the
mortgage now in suit, he would be relieved from the payment
of the note upon which the conditional judgment would be
founded in case the demandant prevailed, and to which note
the said Charles was a party.

It is not necessary to consider the correctness of this ruling,
because we are satisfied, on the report of the evidence, that the
declarations of said Charles, of which the demandant offered
evidence, were made when he was acting as the agent of said
Charles W., and are to be received as a part of the *res gestœ*

Greenl. on Ev. §113. This, however, does not apply to the conversation between Prescott, the witness, and the said Charles. In that interview he was not acting as the agent of his son. The fact appears to have been that Prescott, who had drawn some of the deeds for Jeremiah Green, went at his request to see Charles Green, to demand payment of him of the interest due on the sum in dispute in the present action. This demand the plaintiff in this case had a right to prove, and what Prescott said, when he made the demand, in relation to it, was clearly admissible; and the answer of Charles Green, that he would see Jeremiah, was a part of the same transaction. But if it were otherwise, the words spoken were immaterial; and therefore, if they had been erroneously admitted, it would be no cause for a new trial.

In answer to the evidence offered by the tenant tending to show that the sales of parts of the mortgaged property were insufficient to pay the note secured by the deed set forth in the declaration, the demandant offered evidence of a mortgage, made by one Isaac Green to William Patten, of the same premises, and of the title of said Jeremiah to the same by assignment, for the purpose of showing that the moneys arising from the sales of parts of the mortgaged property were applied to the payment of that mortgage. To the admission of this evidence the tenant, Charles W. Green, objected, on the ground that he was surprised by the introduction of it, and that no notice had been previously given of an intention to offer it; which the counsel contended was required by the 57th rule for the regulation of the practice in this court. 24 Pick. 401. But the objection was overruled, and the evidence was admitted. And we are of opinion that the evidence was properly admitted. It was offered by way of rebutting the testimony introduced by the tenant, and, as such, was not required, by the rule referred to, to be previously stated, upon any construction to be given to it; and as to the surprise alleged, it would seem, from the previous case between these same parties in relation to these mortgages, in which the present tenant was plaintiff in equity, and the demandant was defendant, that no such surprise

could have taken place by the offer of such testimony. But, as to this, it was a question resting upon the discretion of the judge on the trial of the issue, and is not matter of law for the consideration of the court.

The point principally relied upon, by the counsel for the tenant, was that raised by him as to the appropriation of the payments. The facts upon which the point arose were these : The mortgage to Patten, and that to Jeremiah Green, which covered the same premises, contained a number of parcels of estate ; and after Jeremiah purchased the Patten mortgage, some of the parcels of land, at the request of Charles, were sold by Jeremiah, who received the purchase money. Some wood also was cut from three of the lots, and was sold ; the proceeds of which he received. At the times when the money was re ceived by Jeremiah, Charles gave no direction as to the appropriation of it. And it appears that afterwards Jeremiah did apply it to the discharge of the Patten mortgage, as he acknowledged that it was paid, and demanded payment of the money lent by him on the mortgage now in suit, or the interest upon it.

It is not necessary to discuss here the general principles which regulate the appropriation of money received by a creditor who holds different demands against his debtor. But the law, as received in this Commonwealth, authorizes the person paying to make the appropriation, if he pleases. If he does not do it, the creditor may make it, if done within a reasonable time, and before the relations of the parties have been changed in any material matter. And where no appropriation is made by either party, the law makes the appropriation, upon such principles as justice and equity between the parties may require; leaning, however, in the absence of any controlling circumstances, to the application of the money, which is paid, to the discharge of a debt unsecured, rather than to one which is secured. But in the present case the money was not paid by the debtor from sources independent of the security held by the creditor. The money arose from the sale of a part of the mortgaged premises ; and in the absence of any agreement between the parties, or

request at the time by the debtor, how the money should be applied, we think the creditor had a perfect right, at any time, to apply it to the discharge of the preëxisting incumbrance on the estate mortgaged to him, and which he had been compelled to purchase in order to secure himself from loss by entry and foreclosure against him. Nor could the debtor be prejudiced by it; for, admitting both debts to be justly due, and secured by the same property, it was a matter of indifference to which notes the payments were applied.

As to the motion for a new trial, on the ground that the verdict is against evidence, we are not satisfied in regard to the note given by Charles W. Green to Jeremiah Green on the 7th of November 1839, and finally taken up by him September 11th 1841, whether any part of it has been applied to the payment of the money secured by the existing mortgage ; we therefore are of opinion that a new trial should be granted, upon condition that the tenant admits that no part of the principal of said note signed by the said Charles Green, bearing date September 16th 1831, for $2000, has been paid, nor any interest thereon, since September 16th 1839, unless the sum of $500 and the interest thereon, being the amount of Charles W. Green's note to Jeremiah Green, bearing date November 7th 1839, and which was paid to his administrator, September 11th 1841, should be applied towards the discharge of it ; and the jury are to determine whether the amount of said note of $500, or any part thereof, was accounted for by said Jeremiah Green in his life time, and if not, then the amount of such note and interest, or such part thereof as has not been accounted for, shall be deducted from said note of $2000 and interest, and a conditional judgment be rendered accordingly ; and the demandant has liberty to amend the verdict, as prayed for, that it may conform to the declaration ; and the verdict is to be set aside for the above purpose, unless the demandant agrees to allow the said note of $500 in part payment of the said note of $2000.